**CHILDREN'S MEMORIAL HOSPITAL, Plaintiff,**

v.

**ILLINOIS DEPARTMENT OF PUBLIC AID and Jeffrey C. Miller, Director, Defendants.**

**No. 83 C 0588.**

United States District Court, N.D. Illinois, E.D.

March 18, 1983.

Chester Kamin and Sidney Schenkier, Jenner & Block, Chicago, Ill., for plaintiff.

Neil Hartigan, Atty. Gen., James C. O'Connell, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

### SHADUR, District Judge.

Children's Memorial Hospital ("Children's Memorial") sues the Illinois Department of Public Aid ("IDPA") and its Director Jeffrey Miller ("Miller") for declaratory and injunctive relief under 42 U.S.C. § 1983 ("Section 1983"),[1] alleging Illinois' Medicaid reimbursement plan and formula, Ill.Rev. Stat. ch. 23, § 5–5.11 ("Section 5–5.11") and IDPA Rule 4.13.8 ("Rule 4.13.8"), 6 Ill.Reg. 8187 (1982), violate the Social Security Act ("SSA"), 42 U.S.C. § 1396a(a)(13)(A) ("Section 13(A)") and applicable federal regulations.[2] Children's Memorial has moved for a preliminary injunction prohibiting enforcement of Section 5–5.11 and rule 4.13.8. For the reasons stated and on the terms specified in this memorandum opinion and order, that motion is granted as to enforcement of Section 5–5.11 and Rule 4.13.8 against Children's Memorial itself.[3]

### Background

■ IDPA administers and supervises the administration of Illinois' Medicaid program, Ill.Rev.Stat. ch. 23, § 1–1, §§ 5–1 et seq., § 12–1; ch. 127, § 48a; 42 U.S.C. § 1396a(a)(5). Under Medicaid the United States provides funds to reimburse states in part for programs of public assistance to persons "whose income and resources are insufficient to meet the costs of necessary medical services." *Id.* § 1396 ("Section 1396"). Although a state is not required to participate in the Medicaid program, if it chooses to do so and therefore to qualify for federal funds it must comply with SSA and

1. There is substantial doubt IDPA, a state agency, is a suable "person" under Section 1983. *See Yarbrough v. Illinois Department of Mental Health,* 538 F.Supp. 414, 416–17 (N.D.Ill.1982). Miller's presence as a named defendant, however, makes it unnecessary to decide whether sovereign immunity would thus protect IDPA from a Section 1983 suit. On a related issue, Children's Memorial does not in fact seek current relief against Illinois directly under the Fourteenth Amendment, so that Ans.Mem. 1, 11 and 25–28 deal with a non-issue on that score. Indeed IDPA and Miller acknowledge they understand all Children's Memorial's claims seek Section 1983 remedies. Ans.Mem. 12 n. 5.

2. SSA provides no private right of action to enforce State compliance with its provisions, *Edelman v. Jordan,* 415 U.S. 651, 673–74, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974), but Section 1983 is available to enforce SSA claims. *Maine v. Thiboutot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–06, 65 L.Ed.2d 555 (1980). IDPA and Miller dispute (Ans.Mem. 22–23) Children's Memorial's standing only as to its claim (Complaint ¶ 23; Mem. 17) that Illinois' reimbursement plan violates the Medicaid recipient "reasonable access" requirement of

Section 13(A) and implementing regulation 42 C.F.R. § 447.252(a)(3)(iii):

> The payment rates for such services must be adequate to assure that recipients have reasonable access, taking into account geographic location and reasonable travel time, to inpatient hospital services of adequate quality.

As Children's Memorial R.Mem. 12–13 and n. 11 note, the relevant case law appears to support its standing to assert its Medicaid patients' "reasonable access" rights. In any event, this opinion does not rely on the merits of Children's Memorial's "reasonable access" claim. However, the relationship between Children's Memorial and its Medicaid patients is relevant to the discussion below of the irreparable harm threatened by enforcement of Section 5–5.11 and Rule 4.13.8.

3. By agreement the parties have submitted the issues to this Court on paper (including the affidavits discussed in this opinion), with no live testimony. Those submissions constitute the hearing called for by Fed.R.Civ.P. ("Rule") 65. This opinion embodies this Court's findings of fact and conclusions of law in accordance with Rule 52(a).

applicable regulations. *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980); *Smith v. Miller,* 665 F.2d 172, 175 (7th Cir.1981).

Before October 1, 1981 SSA required a state to reimburse hospitals for "the reasonable cost of inpatient hospital services provided under" the state Medicaid plan. 42 U.S.C. § 1396a(a)(13)(D) ("Section 13(D)"), repealed by Pub.L. 97–35, § 2173(a)(1)(A), 95 Stat. 808, Aug. 13, 1981. In effect hospitals were allowed to recover from states their full actual cost of providing inpatient care to Medicaid patients.

In 1981 Congress found "reasonable cost" reimbursement was "inherently inflationary and contain[ed] no incentives for efficient performance." S.Rep. No. 139, 97th Cong., 1st Sess. 478, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 744; *see also* 2 H.R. Rep. No. 158, 97th Cong., 1st Sess. 293, *reprinted in* 4 Medicare & Medicaid Guide (CCH) ¶ 24,486, at 8799–33 (1981). Congress therefore enacted Section 13(A), under which a state plan for medical assistance must provide:

> for payment ... of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State) and which, in the case of hospitals, take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs and provide, in the case of hospital patients receiving services at an inappropriate level of care ... for lower reimbursement rates reflecting the level of care actually received ... which the State finds, and makes

assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality; and such State makes further assurances, satisfactory to the Secretary, for the filing of uniform cost reports by each hospital, skilled nursing facility, and intermediate care facility and periodic audits by the State of such reports.[4]

As Section 13(A) itself indicates, state efficiency under the Medicaid program was not to be accomplished at the cost of quality and safe care for the needy. As the Senate Report put it, the desired state fiscal flexibility would not justify "arbitrary reductions in payment that would adversely affect the quality of care." S.Rep. No. 139 at 478, *reprinted in* 1981 U.S.Code Cong. & Ad.News at 744. And the House Report too expressed its concern about arbitrariness:

> The Committee believes that hospitals should be paid for the cost of their care to Medicaid patients in the most economical manner. The Committee intends States to recognize that facilities that provide teaching services or other specialized tertiary care services [ ] may have operating costs which exceed those of a community hospital. The Committee is concerned that the reimbursement methods estab-

---

4. Section 13(A)'s basic implementing regulation, 42 C.F.R. § 447.252, provides in pertinent part:

> (a) *Payment rates.* (1) The Medicaid agency must pay for inpatient hospital services and long-term care facility services through the use of rates that are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated providers to provide services in conformity with applicable State and Federal laws, regulations, and quality and safety standards.

> (2) The payment rates used by the Medicaid agency must be determined in accordance with methods and standards developed by the agency.
> (3) With respect to inpatient hospital services—
> (i) The methods and standards used to determine payment rates must take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs ...

lished by the States recognize the need to provide a full range of both primary care and tertiary care services to Medicaid beneficiaries and take into account the differences in operating costs of the various types of facilities needed to provide this broad scope of services. For example, the Committee does not intend that the only facility providing a specific type of treatment, such as treatment of spinal cord injury, not be available to Medicaid beneficiaries because the State's payment level is inadequate to meet the basic cost of care in that facility.

2 H.R.Rep. No. 158 at 293–94, *reprinted in* 4 Medicare & Medicaid Guide ¶ 24,486 at 8799–33.

■ Illinois' General Assembly responded to Congress' complex directive by enacting Section 5–5.11, subsection (f)(1) of which imposed a $797.5 million ceiling on total Medicaid payments to hospitals for inpatient, outpatient and clinic services in fiscal year 1983 (ending June 30, 1983).[5] In an effort to carry out that legislative mandate, IDPA adopted and promulgated two new rules:

1. IDPA Rule 4.13.7 ("Rule 4.13.7"), 6 Ill.Reg. 15029 (1982), set out a new method for calculating hospitals' daily Medicaid reimbursement rate.[6]

2. Rule 4.13.8 stated a mechanism for determining the maximum number of days of inpatient care a hospital could provide Medicaid recipients in fiscal 1983.

Though Rule 4.13.8 is typical of complex administrative regulations, its basic outline is nevertheless intelligible:

**5.** Another $170 million is available in fiscal year 1984 to reconcile fiscal year 1983 claims. Section 5–5.11(f)(2).

**6.** Children's Memorial does not challenge Rule 4.13.7. Before fiscal year 1982 IDPA reimbursed Children's Memorial for its full actual cost for each "patient-day" of Medicaid care delivered (Complaint ¶ 8). In fiscal 1982 Children's Memorial was reimbursed at a daily rate of $469.15 under the rate formula adopted for that year, during which its actual average daily Medicaid cost was $614.63. (*id.* ¶ 9). Rule 4.13.7 evidently sets Children's Memorial's 1983 daily rate of reimbursement at $435.50 (*id.*

1. It lists 214 "primary diagnosis groups." ¶ A(1), 6 Ill.Reg. at 8189–94. Those groupings identify various ailments requiring medical treatment, although the groupings vary in specificity (for example, "Disorders of the thyroid gland," "Acute tonsillitis" and "Burn").

2. Hospitals are told they will be classified in three groups: Rehabilitative, Major Teaching, and Other. ¶ A(2), *id.* at 8194–95.

3. IDPA announces it will develop (a) a sample of lengths of stay for each primary diagnosis group for each hospital category and (b) a sample representative of the mix of Medicaid recipient diagnoses as treated in major teaching and "other" hospitals. ¶¶ A(3)–(4), *id.* at 8195.

Based on that structure, the crux of Rule 4.13.8 is that, with certain immaterial exceptions, the maximum number of reimbursable Medicaid days is set at the statewide 80th percentile of length of stay by primary diagnosis groups and hospital classification. ¶¶ A(5)–(9), *id.* at 8195–97.[7] Rule 4.13.8 thus is essentially an effort to reduce over-utilization of hospitals by denying reimbursement to those that, on average, retain their patients for lengths of stay falling in the highest 20 percentile statewide for specified diagnosed ailments.

Children's Memorial is classified as a Major Teaching Hospital. It is a highly specialized facility, treating only pediatric patients and providing care for many rare or complex conditions.[8] Approximately 25% of its patients receive care under the Illinois Medicaid Program. Complaint ¶ 4.

¶ 14; Mem. 18). But 1984 reconciliation funds may increase the aggregate Children's Memorial daily rate to as much as $566, still $50 less than its 1982 actual cost (Supp.Mem. 2 & App.).

**7.** Rehabilitative Hospitals are entirely exempted from the 80th percentile formula. ¶ A(9d), 6 Ill.Reg. at 8197.

**8.** Some aspects of Children's Memorial's uniqueness will be treated in greater detail in the discussion of the applicable criteria for injunctive relief.

Under Rule 4.13.8 Children's Memorial will be allowed reimbursement for 16,099 days of Medicaid service in fiscal 1983. It projects exhausting that number of days in mid-March 1983. Complaint ¶ 15. There is no dispute as to these or other recited facts.

*Governing Law*

Our Court of Appeals regularly repeats the criteria applicable to the granting or denial of preliminary injunctive relief. In accordance with the priority as defined in *O'Connor v. Board of Education,* 645 F.2d 578, 580 (7th Cir.), *cert. denied,* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981), the Court has most recently restated the standards in *Syntex Ophthalmics, Inc. v. Tsuetaki,* 701 F.2d 677 at 681 (7th Cir.1983):

> [I]n order to justify the district court's exercise of discretion in issuing the preliminary injunction, the plaintiff must show: "(1) it has at least a reasonable likelihood of success on the merits, (2) it has no adequate remedy at law and will otherwise be irreparably harmed, (3) the threatened injury to it outweighs the threatened harm the preliminary injunction may cause the defendants, and (4) the granting of the preliminary injunction will not disserve the public interest."

This opinion will address the factors in that sequence.

I. *Reasonable Likelihood of Success on the Merits*

■ This Court recognizes the merits of Children's .Memorial's claims must be viewed in the context of approval (contemporaneously with the filing of this lawsuit)

9. Children's Memorial originally claimed HCFA had not approved the IDPA Medicaid plan. Complaint ¶ 24; Mem. 17–18. But IDPA and Miller responded HCFA's approval had in fact been received in the meantime. Ans.Mem. 14, 23–24 & Ex. H. Children's Memorial then withdrew its contention (and presumably its Complaint ¶ 24) .as to HCFA's failure to act. R.Mem. 7 n. 6.

10. It should also be understood this opinion does *not* hold Rule 4.13.8 necessarily reflects an unreasonable approach to the *general* problem addressed by Congress in enacting Section 13(A). It is possible the 80th percentile concept, if properly structured, could effectively

of IDPA's reimbursement formula by the Health Care Financing Administration ("HCFA"), the federal agency charged with review of state assurances of compliance with Section 13(A) and applicable regulations. *See* 42 CFR §§ 447.252(b), (c) and (d); 447.253(a) and (d).[9] Of course "[t]he interpretation of the agency charged with administration of the statute is entitled to substantial deference." *Michael Reese Physicians & Surgeons, S.C. v. Quern,* 606 F.2d 732, 736 (7th Cir.1979), *adopted en banc,* 625 F.2d 764 (7th Cir.1980), *cert. denied,* 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981). But substantial deference does not call for abdication of this Court's responsibilities: "A court does not defer to an administrative construction of a statute when there are 'compelling indications that it is wrong,'" *Atchison, Topeka and Santa Fe Ry. Co. v. United States,* 617 F.2d 485, 496 (7th Cir.1980), quoting *Espinoza v. Farah Manufacturing Co.,* 414 U.S. 86, 94–95, 94 S.Ct. 334, 339, 38 L.Ed.2d 287 (1973) and *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969).[10] This opinion turns, then, to the merits.

A. *$797.5 Million Fiscal Year 1983 Ceiling*

Children's Memorial contends (Mem. 9) Illinois' fiscal year 1983 ceiling violates Section 13(A) because "[t]he ceiling bears absolutely no relationship to the efficiency and economy of the care provided by a particular hospital or, for that matter, by hospitals in the aggregate." IDPA and Miller respond the ceiling (1) marks the point at

weed out the inefficient provider in the mine run situation, and of course perfection in administrative line-drawing is not required. In that sense of dealing with the general problem, the HCFA approval might not be wrong. But Children's Memorial is literally unique: It is one of a kind in Illinois. And its situation, and the arbitrariness of the Rule if applied to it, were of course not before HCFA when it reviewed the Rule. Children's Memorial's situation as to the mix and the depth of intensity of services it provides is truly singular, thus paralleling directly the example addressed by the House Report quoted supra pp. 168–69.

which it is currently "practicable" for Illinois to reimburse hospitals for Medicaid services (Ans. Mem. 12, quoting Section 1396), (2) was the result of negotiations between IDPA and Illinois hospital representatives (Ans. Mem. 13–14), (3) was approved by HCFA (*id.* at 14) and (4) incorporates rates to which Children's Memorial itself contractually agreed (*id.* at 15–16).

██ IDPA and Miller beg the question whether Illinois' Medicaid plan and formula are in accord with the Section 13(A) mandate that the state assure hospital payments and rates are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." Surely that specific mandate takes precedence over the general language of Section 1396. *See In re Thornhill Way I,* 636 F.2d 1151, 1156 (7th Cir.1980). Moreover, neither industry-wide bargaining nor Children's Memorial's own agreement to IDPA's reimbursement rates amount to waivers of any rights under SSA. *Cf. NLRB v. South Central Bell Telephone Co.,* 688 F.2d 345, 355 (5th Cir.1982) ("contractual waivers of . . . fundamental statutory rights must be 'clear and unmistakable.' "). And of course Children's Memorial is challenging whether HCFA's approval of Illinois' plan is in accord with Section 13(A), so HCFA's approval cannot bar assertion of Children's Memorial's claims in this action.

██ Nevertheless Children's Memorial has failed to show how or why the 1983 ceiling *in itself* violates Section 13(A). Children's Memorial does not challenge its daily reimbursement rate as determined under Rule 4.13.7, nor has it sought to avail itself of the possibility of administrative review of that daily rate. Rule 4.13.7(d)(2), (e), 6 Ill.Reg. at 15033–35.[11] Thus Children's Memorial must show Illinois' 1983 ceiling necessarily fails to reimburse hospitals or Children's Memorial itself at the economic and efficient level mandated by Section 13(A).

This Court afforded Children's Memorial an additional opportunity to clarify its argument on this point. Yet it simply has repeated (Supp.Mem. 1–2) its assertion the ceiling is unrelated to considerations of efficiency and economy. That assertion proves too much.

True, an obviously paltry appropriation would itself negate the possibility of reimbursement at the economic and efficient level mandated by Section 13(A). But $797.5 million is not an obviously inadequate sum, so Children's Memorial is obliged to show *that* amount will itself result in inadequate reimbursements. Its argument—that the ceiling amount is unrelated to efficiency considerations—could be made about an appropriation double or triple the one Illinois has made. Obviously the real questions are (1) whether the ceiling is adequate to cover all efficient providers or (2) how the particular ceiling is applied to hospitals' requests for reimbursement.

On the first question, for aught that appears an amount only half Illinois' ceiling figure could be paid out only to efficient providers; on the latter question, an amount double Illinois' ceiling might perhaps be paid out only to inefficient providers. Plainly the difference lies not in the ceiling amount but in the mechanism for distribution of the funds. In any event, Children's Memorial clearly has failed to show it has any likelihood of success in challenging Illinois' fiscal 1983 ceiling per se as a violation of Section 13(A).

### B. The 80th Percentile Formula

██ Children's Memorial focuses on the method for distribution of Illinois' Medicaid funds by attacking the 80th percentile formula under Rule 4.13.8. There are two aspects to its onslaught:

11. IDPA and Miller refer repeatedly (Ans.Mem. 10, 19, 24) to Children's Memorial's daily rate and the availability of administrative review of that rate. In fact the availability of review is limited and Children's Memorial may not be able to seek such review. (Supp.Mem. 2). In any event, Children's Memorial does not challenge Rule 4.13.7 or its daily rate, so arguments as to reimbursement rates and their review are irrelevant here.

1. That formula is based on diagnosis groupings that are too broad for the purposes of efficiency comparisons (Mem. 11–12; R. Mem. 8–9, 10).

2. In operation the formula improperly equates Children's Memorial, a free-standing pediatric facility, to other teaching hospitals (Mem. 12–14; R. Mem. 9–11).

IDPA and Miller respond (1) by defending the 80th percentile formula as an effective mechanism for identifying inefficient providers (Ans.Mem. 17–19), (2) by claiming there is no evidence to overcome the presumption of the formula's validity implied in HCFA's approval (*id.* at 18) and (3) by suggesting Children's Memorial is an inefficient provider (*id.* at 19–21).

Despite Children's Memorial's implicit contention to the contrary (Mem. 11), a percentile formula *may* be a reasonable way to identify inefficient providers. And Illinois' adopted formula itself suggests why this is so. Illinois has attempted to classify diagnoses and treatments and hospital settings in such a way that overutilization can be identified: Where lengths of hospital stays for the same treatment under the same circumstances exceed a certain fairly determined point, there may be some indication a provider is not restricting treatment to what is medically required. But the critical element in such a system is that comparisons must be made between like treatments in like settings. Here the evidence strongly proves, and this Court finds, Illinois' formula fails so dramatically in those regards as to Children's Memorial as to defeat the purposes of Section 13(A).

Children's Memorial has submitted the February 2, 1983 Affidavit of Professor Hans Zeisel ("Zeisel Aff.") to explain how the 80th percentile formula affects it. IDPA accumulated a data base for all patients treated in each of the 214 primary diagnosis groups in all Teaching Hospitals (the classification to which Children's Memorial was assigned). *Id.* ¶ 8. From that data base IDPA calculated the 80th percentile point for length of hospital stay for patients in each primary diagnosis group.

That point identifies the length of stay IDPA regards as "efficient and economical" because it was adequate for 80% of the patients in the group. *Id.* ¶¶ 9–10 and Table 1. Days of stay beyond the 80th percentile point are declared "excess days," and a hospital's aggregate number of excess days becomes (with certain adjustments) the number of days of Medicaid reimbursement to be disallowed in fiscal 1983 as against 1982—from which in turn a hospital's maximum allowable number of fiscal 1983 days was determined. *Id.* at ¶¶ 11–13 and Tables 2–4A; Rule 4.13.8 ¶¶ A(5)–(11), 6 Ill.Reg. at 8195–97.

Children's Memorial submits the February 3, 1983 Affidavit of Professor John D. Thompson ("Thompson Aff.") to identify one basic flaw in Rule 4.13.8. Thompson states (Aff. ¶ 7) what even a layman might suspect: Illinois' primary diagnosis groups "include illnesses that are too disparate in type and cost to be contained within the same grouping." Obviously, to the extent illnesses in the same grouping in fact differ in complexity, need for surgery or likelihood of complications, differences in length of stay for patients within the grouping will not be related to efficiency or economy of treatment. Comparison of efficiency presupposes refinement in the classification of treatments. Thompson describes such refinement in an alternate "Diagnosis Related Grouping System" he devised and has revised now to include 467 classifications. Indeed that system has been recommended by HCFA itself for use under the Medicare program. Thompson Aff. ¶¶ 4–5.

Zeisel Aff. ¶¶ 14–15 shows the other critical flaw in Rule 4.13.8's classification system as it impacts Children's Memorial. In fact the aggregate experience of teaching hospitals, which formed the data base for the entire Illinois formula, is far removed from Children's Memorial's actual patient mix. Children's Memorial has no patients in 65 of the 214 primary diagnosis groups, almost no patients in 64 others, and 93.4% of its patients in the remaining 85 groups. Children's Memorial's "excess days" thus derive almost entirely from patients falling

in the relatively few diagnosis groups it treats. Children's Memorial is being penalized by Rule 4.13.8 not for any inefficiency but because its patients fall into the more complex ends of the more complex primary diagnostic groups. This is the import of several affidavit statements that show Rule 4.13.8 does not properly take into account Children's Memorial's status as a specialist pediatric hospital. Zeisel Aff. ¶ 30c; Thompson Aff. ¶ 8; February 1, 1983 Affidavit of Earl J. Frederick ("Frederick Aff.") ¶¶ 3–6.

What really emphasizes the special status of Children's Memorial is its operation as a free-standing pediatric facility. Illinois itself has recognized such facilities are distinct, and other states treat such facilities separately for Medicaid reimbursement purposes. Mem. 13–14; Frederick Aff. ¶¶ 5–6. Moreover, Children's Memorial treats, and regularly has referred to it, complex cases other hospitals typically do not or cannot handle. February 2, 1983 Affidavit of Margaret E. O'Flynn ("O'Flynn Aff.") ¶¶ 4–9. Any "efficiency" system based on average hospital stays for the universe of all patients is obviously inapplicable to Children's Memorial's special circumstances. Mem. 16.[12] In short, Children's Memorial is at least likely to prove Illinois' application of its 80th percentile formula to define Children's Memorial's right to reimbursement is arbitrary and irrational.

Against this compelling evidence IDPA and Miller make assertions evidently meant to suggest Children's Memorial's inefficiency. But as Children's Memorial shows (R.Mem. 9–11), IDPA and Miller rely on facts and studies irrelevant to the question of the efficiency of a hospital like Children's Memorial. IDPA and Miller only repeat the flaw of Rule 4.13.8: They do not (as it does not) adequately address the actual circumstance of Children's Memorial.

In all Children's Memorial has presented compelling evidence that Rule 4.13.8 does not present a "reasonable and adequate" plan for reimbursing Medicaid costs at a hospital with Children's Memorial's special mix of patients. As applied to Children's Memorial, Rule 4.13.8 is the kind of arbitrary plan both Senate and House committees were at pains to deny Section 13(A) would justify. At least Children's Memorial has shown, and this Court so finds, it has a reasonable likelihood of success on its claim Rule 4.13.8 violates Section 13(A) by failing to provide reimbursement for an "efficiently and economically operated" pediatric facility.[13]

## II. Adequate Remedy at Law and Irreparable Harm

IDPA and Miller regard it as obvious (Ans.Mem. 29) Children's Memorial stands to suffer only compensable, monetary harm if its motion for a preliminary injunction is denied and it ultimately prevails on the merits. Not so: Children's Memorial shows its real concern is with its nonmonetary losses inevitably caused by enforcement of Rule 4.13.8 against it. Mem. 20; R.Mem. 14.[14] Children's Memorial may or may not

---

**12.** From the parties' submissions it appears that only two other Illinois hospitals (both at the other end of the state, serving the St. Louis area) are even arguably comparable to Children's Memorial—and there is substantial evidence even those two do not match Children's Memorial's mix. Even if they did, however—even if Children's Memorial were one of three such facilities in the state, rather than being truly unique—the result here should be no different.

**13.** Children's Memorial also asserts the lack of a general appeals procedure to challenge the 80th percentile formula. Complaint ¶ 26; Mem. 18 & n. 6; R.Mem. 13–14. SSA Regulations require only an appeals procedure to allow hospitals to present evidence on and attack reimbursement *rates*. 42 C.F.R. § 447.258. Of course Section 13(A) itself might require such an appeals procedure as to the formula under which rates are applied, but Children's Memorial has not explicitly advanced that argument. Something like that argument is, however, implicit in Children's Memorial's challenge of the 80th percentile formula's arbitrariness. It is unnecessary to resolve those points here, just as it was unnecessary to resolve the issues as to Children's Memorial's "reasonable access" claims. See n. 2.

**14.** Children's Memorial also denies (R.Mem. 14–15) the IDPA–Miller assertion (Ans.Mem. 29) its monetary losses can be recovered in the Illinois courts.

be entitled to assert the irreparable damages its turned-away Medicaid patients might suffer under Rule 4.13.8 (see n. 2). But the relationship between patients and their hospitals and doctors is such that, quite independently of the legal issue of standing, irreparable damage to patients carries with it irreparable damage to their doctors and hospitals. Arbitrary elimination of Medicaid patients after mid-March will necessarily affect (1) Children's Memorial's utilization of its staff and equipment, (2) its reputation and staff morale and (3) its desirability as a facility to which to donate volunteer services or refer pediatric patients. Frederick Aff. ¶¶ 15–16; O'Flynn Aff. ¶¶ 13–14.

There is no doubt Children's Memorial will suffer grave financial consequences should Rule 4.13.8 be enforced against it. Frederick Aff. ¶¶ 7–13. There is considerable doubt any financial losses can be recovered from Illinois, and there is considerable evidence Children's Memorial will suffer irreparable injury to the quality, desirability and reputation of its services. Children's Memorial has made an adequate showing of the need for preliminary injunctive relief.

III. *Balancing of Harms*

IDPA and Miller identify (Ans.Mem. 31) financial expense as the potential harm to Illinois that would be inflicted by a preliminary injunction. They really have not shown, however, that barring enforcement of Rule 4.13.8 as to Children's Memorial alone would necessarily cause Illinois to exceed its fiscal 1983 ceiling or its planned 1984 reconciliation budget. Similarly it is not at all clear an adequate plan would deprive other efficiently-operated hospitals of Medicaid funds (*id.*). Moreover, if the $797.5 million ceiling operates arbitrarily to curtail Children's Memorial's ability to meet the needs uniquely served by its facilities, Illinois can hardly portray the ceiling as sacrosanct.[15] In any event, because the scope of the injunctive relief granted will

be narrow and because IDPA will have every incentive to limit the financial consequences on Illinois, this Court determines the threatened injury to Children's Memorial far outweighs any threatened harm an injunction may arguably inflict on Illinois.

IV. *Disservice to the Public Interest*

This is not a case in which a private interest is set against the public interest or the public fisc. Rather Children's Memorial's Complaint asserts—and it has proved for current purposes—Illinois' Medicaid plan applies to Children's Memorial in a way that conflicts with the national public interest as articulated in Section 13(A) and applicable regulations. Preliminary injunctive relief here clearly will not disserve the public interest.

*Scope of Relief*

Children's Memorial (Motion at 6) seeks (1) a preliminary injunction against enforcement of Section 5–5.11 and Rule 4.13.8 and (2) an order requiring Medicaid reimbursement to Children's Memorial at 1981 levels. Both requests are broader than the evidence and law will allow.

As part I reflects, the arguments on the merits show Children's Memorial has a reasonable likelihood of success on its contention Section 5–5.11 and Rule 4.13.8—*as they establish the 80th percentile formula in its application to Children's Memorial itself*—are arbitrary and unreasonable and therefore in violation of Section 13(A). Injunctive relief must be limited accordingly: IDPA and Miller will be enjoined from enforcing Children's Memorial's designated maximum number of reimbursable fiscal 1983 days based on the new formula.

No possible predicate has been advanced for this Court's ordering a return to the 1981 rates or formula. Not only has Children's Memorial failed to show the Illinois fiscal 1983 ceiling violates Section 13(A), but it has also failed to show the 1983 formula *in general* violates Section 13(A).

---

15. Procrustes clearly had that same view of his mythic bed: It was not his fault travelers did not fit the bed precisely, so he was justified in amputations or stretching of their limbs to make them do so. IDPA and Miller are no more justified in their perception (or their solution) than was Procrustes.

More importantly Congress itself repealed the 1981 SSA requirements, and this Court is not about to override that legislative judgment. Children's Memorial's plea for broad relief pays insufficient regard to the values of federalism and separation of powers.

### Conclusion

For all the foregoing reasons this Court concludes:

1. Children's Memorial has proved it has at least a reasonable likelihood of success on the merits of its claim that (a) Section 5–5.11 and its implementing Rule 4.13.8, as applied to Children's Memorial, are arbitrary and unreasonable and in violation of Section 13(A) and (b) the limitation they impose on the maximum number of reimbursable fiscal 1983 Medicaid days cannot validly be enforced against Children's Memorial.

2. Children's Memorial has no adequate remedy at law and will otherwise be irreparably harmed by that limitation on reimbursement.

3. Injuries to Children's Memorial threatened by the likely invalid limitation on reimbursement far outweigh any asserted threatened harm a preliminary injunction may cause IDPA and Miller.

4. Granting the preliminary injunction will promote—not disserve—the public interest as defined by Congress.

All criteria for issuance of a preliminary injunction under Rule 65 have therefore been met. Counsel are directed to proceed as follows:

1. On or before March 25, 1983 Children's Memorial's counsel shall file (with a copy to opposing counsel) a draft order complying with Rule 65(d) for a preliminary injunction, as approved in this opinion, and a statement as to the appropriate amount of security required to satisfy Rule 65(c).

2. Within one week after such filing defendants' counsel shall file (with a copy to opposing counsel) their comments on Children's Memorial's submission.

This Court will promptly issue the formal preliminary injunction order in accordance with this opinion.