**TRANSITIONAL SERVICES OF NEW YORK FOR LONG ISLAND, INC.,** Plaintiff,

v.

**The NEW YORK STATE OFFICE OF MENTAL HEALTH; Commissioner Michael Hogan; The New York State Department of Health; and Commissioner Nirav R. Shah, Defendants.**

No. 13–CV–7307 (JFB)(GRB).

United States District Court, E.D. New York.

Signed March 20, 2015.

Alan Polsky, Alan Polsky, Esq., Medford, NY, Bruno J. Laspina, Bruno J. Laspina, Esq., Brentwood, NY, Roy W. Breitenbach, John E. Becker, Garfunkel Wild, P.C., Great Neck, NY, for Plaintiff.

Robert Edward Morelli, Office of the New York State Attorney General, Patricia.M. Hingerton, Office of the Attorney General, Hauppauge, NY, for Defendants.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

This action is the most recent lawsuit in a series of protracted legal disputes over New York State's administration of federal Medicaid funds. Plaintiff Transitional Services of New York for Long Island ("plaintiff" or "TSLI") brings this action against the New York State Office of Mental Health, Commissioner Michael Hogan, the New York State Department of Health, and Commissioner Nirav R. Shah (collectively, "defendants" or "the State"), pursuant to 42 U.S.C. § 1983 ("Section 1983"). The complaint asserts that the State's policy for the administration of Medicaid funds to healthcare providers violates TSLI's federal rights.

The New York State Attorney General's Office has filed a motion on behalf of the defendants, seeking dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Although the theories of liability contained in the complaint are somewhat difficult to parse, the issues before the Court have been considerably refined based upon the representations of counsel at oral argument. In particular, plaintiff's counsel clarified that TSLI's sole claim for relief is a Section 1983 claim seeking vindication of TSLI's federal rights under a single provision of the Medicaid Act: 42 U.S.C.

§ 1396a(a)(32).[1] During a telephone conference on March 6, 2015, plaintiff's counsel also confirmed that TSLI does not contend that the State has violated any other provision of the Medicaid Act or any other federal law.

In its motion to dismiss, the State argues that TSLI cannot pursue its Section 1983 claim, because § 1396a(a)(32) of the Medicaid Act does not create a privately enforceable right. The State also argues that the complaint does not plausibly allege a violation of § 1396a(a)(32). In the alternative, the State argues that TSLI's claims are procedurally barred under several doctrines of preclusion, abstention, and immunity.

For reasons set forth herein, the Court grants the motion and dismisses this action in its entirety. In short, the Court concludes that 42 U.S.C. § 1396a(a)(32) does not confer a right that is enforceable under Section 1983. Furthermore, the Court concludes that, even if TSLI could bring such a suit through Section 1983, the complaint does not plausibly allege a violation of § 1396a(a)(32). Having determined that plaintiff has failed to state a legally cognizable claim, the Court does not reach the defendants' procedural arguments.[2]

## I. BACKGROUND

Plaintiff TSLI is a not-for-profit corporation that operates several social work programs on Long Island. (Compl. ¶ 1.) As part of its programming, TSLI provides rehabilitative services, some which which are reimbursed through the federal Medicaid program. (*Id.*) These federal funds are administered and disbursed by the New York State Department of Health, as part of the State's Medicaid Plan. (*Id.* ¶¶ 9–16.)

The State currently has a policy entitled "exempt income recapture guidelines," under which TSLI—and other providers—are required to return to the State a portion of their Medicaid income. (*Id.* ¶ 26.) In 2010, New York State enacted a statute to codify the policy. *See* 2010 N.Y. Laws Ch. 11, Part D. Additionally, the contract between TSLI and the State contains provisions addressing the recapture of Medicaid funds disbursed to TSLI. (*See* Pl. Mem. at 3–5.)

The State's attempts to recapture Medicaid funds from TSLI—whether by policy, contract, or statute—have been the subject of a series of lawsuits between the parties. In May 2004, TSLI brought suit against the State in New York State court (*"TSLI I "*), challenging the State's attempt to collect Medicaid revenues from TSLI by withholding a percentage of future Medicaid payments. The trial court found in favor of TSLI, and the defendants appealed. While that appeal was pending, TSLI filed a second lawsuit (*"TSLI II "*). The Appellate Division, Second Department, then reversed and remanded *TSLI I* in favor of the defendants. *See Transitional Services of Long Island v. Office of Mental Health,* 44 A.D.3d 673, 675, 843 N.Y.S.2d 353 (2d Dep't 2007). Both parties appealed to the New York State Court of Appeals, which dismissed the case as moot on consent of the parties. *Transitional Services of Long Island v. Office of Mental Health,* 13 N.Y.3d 810, 890 N.Y.S.2d 431, 918 N.E.2d 944 (N.Y.2009). Based upon the decisions in *TSLI I,* the trial court

---

1. The Medicaid Act is Title XIX of the Social Security Act, which is codified at 42 U.S.C. § 1396 *et seq.*

2. Because this Court holds that the federal claim in this case is not legally cognizable, the Court expressly declines to reach the defendants' arguments that TSLI's prior litigation precludes any present or future challenge to the State's recapture of TSLI funding.

dismissed *TSLI II.* TSLI did not appeal that decision. In 2009, TSLI commenced a third suit in state court, which is still pending.

Plaintiff commenced the instant lawsuit on December 23, 2013, alleging that the State's attempt to recover Medicaid funds from TSLI violates the Social Security Act. Defendants filed a motion to dismiss the complaint on June 12, 2014, and plaintiff filed an opposition to that motion on August 19, 2014. Defendant filed a reply on September 11, 2014, and the Court heard oral argument on October 27, 2014. At oral argument, the Court permitted plaintiff to submit additional support for TSLI's position that the Medicaid Act creates a private right of action. Plaintiff submitted a letter brief on November 5, 2014, and defendants submitted a response to that letter on November 12, 2015. The Court held a telephone conference on March 6, 2015, to clarify plaintiff's position regarding which provision of the Medicaid Act forms the basis of TSLI's claim for relief. Clarification was necessary because plaintiff's briefing focused on a provision of the Medicaid Act that was not in the complaint. At the conference, plaintiff's counsel represented that TSLI's claims rest upon one section of the Act alone, 42 U.S.C. § 1396a(a)(32), and that TSLI does not argue that the State's policy violates any other provision of the Medicaid Act, or any other federal law. In other words, the sole claim for relief in this case is a Section 1983 claim premised upon private enforcement of § 1396a(a)(32).

This matter is fully submitted, and the Court has fully considered the submissions of the parties.

## II. MOTION TO DISMISS

### A. Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir.2010) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, district courts must "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### B. Discussion

Although defendants assert that dismissal is appropriate on several grounds, the Court concludes that plaintiff's claims fail on the merits, and thus the Court need not reach the defendants' procedural arguments. The Court first addresses whether TSLI can enforce § 1396a(a)(32) of the Medicaid Act through Section 1983. Sec-

ond, the Court addresses, in the alternative, whether TSLI has plausibly alleged a violation of the Medicaid Act.

### 1. Enforcement Through Section 1983

As a threshold matter, the Court must consider whether § 1396a(a)(32) confers a right upon TSLI that is privately enforceable under Section 1983.

■ To state a claim under § 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983; *see also Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999). Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004) (quotation omitted). Furthermore, Section 1983 "is enforceable only for violations of federal rights, not merely violations of federal laws." *Torraco v. Port Auth.,* 615 F.3d 129, 136 (2d Cir.2010) (citing *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283–90, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) and *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). In order to determine the existence of a federal right enforceable under Section 1983, the Court must consider the factors articulated by the Supreme Court in *Blessing v. Freestone* (commonly known as the *Blessing* factors):

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); *see also Torraco,* 615 F.3d at 136. Following the Supreme Court's decision in *Gonzaga,* however, the Court is mindful that the primary inquiry is, above all, "whether Congress *intended to create a federal right.*" *Gonzaga,* 536 U.S. at 284, 122 S.Ct. 2268 (emphasis in original). Indeed, both parties have focused their briefing almost exclusively on the issue of Congressional intent. The Court's analysis focuses on this issue because the Second Circuit has interpreted *Gonzaga* "to mean, at least, that courts should not find a federal right based on a rigid or superficial application of the *Blessing* factors where other considerations show that Congress did not intend to create federal rights actionable under § 1983." *Wachovia Bank, N.A. v. Burke,* 414 F.3d 305, 321 (2d Cir.2005), *cert. denied,* 550 U.S. 913, 127 S.Ct. 2093, 167 L.Ed.2d 830 (2007).

With these standards in mind, the Court turns to the particular statute at issue here. The Medicaid Act provides joint state and federal funding of medical care for indigent persons. *Wong v. Doar,* 571 F.3d 247, 251 (2d Cir.2009). A state that wishes to receive federal funding for its Medicaid program must comply with the requirements of the Medicaid Act. *Id.* Section 1396a(a) of the Act addresses the required contents of any state plan for providing medical assistance under the Medicaid regime. *See* 42 U.S.C. § 1396a(a). Subsection 32 of that provision requires that a state plan for medical assistance must "provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care

or service, under an assignment or power of attorney or otherwise," except under circumstances not relevant here. 42 U.S.C. § 1396a(a)(32). As courts have recognized, the purpose of the statute was to prevent healthcare providers from assigning their entitlement to reimbursement (from the state) to a third party:

> Prior to 1972, it was possible for state departments of public aid to reimburse medical providers at any address designated by the provider on the bill for services rendered. Quite frequently, physicians had their payment vouchers sent directly to factoring companies which would pay the provider at a discounted amount of the face value of the bills in exchange for an assignment of the physician's interest in the bills. In this manner, the provider obtained immediate payment for services rendered, albeit at a discounted rate. However, this system of payment was believed to be responsible for inflated and sometimes fraudulent charges for services rendered.

*Michael Reese Physicians & Surgeons, S.C. v. Quern,* 606 F.2d 732, 734 (7th Cir. 1979), *adopted en banc,* 625 F.2d 764 (7th Cir.1980), *cert. denied,* 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981). In response to this problem, Congress amended § 1396a(a) to stop the "factoring" of Medicaid receivables. *Danvers Pathology Associates, Inc. v. Atkins,* 757 F.2d 427, 428–31 (1st Cir.1985) (Breyer, J.) (discussing the legislative history of § 1396a(a)(32)); *Mack v. Secretary of the HHS,* No. 90–1427V, 1997 WL 74704, at *3, 1997 U.S. Claims LEXIS 57, at *10 (Fed.Cl.

Spec.Mstr. Feb. 3, 1997) (purpose of § 1396a(a)(32) is to "prohibit financial middlemen who receive payment via the discounting of claims from receiving Medicaid funds").

It is against this backdrop that the Court considers whether subsection 32 confers a right upon healthcare providers such as TSLI.[3] Plaintiff argues that subsection 32 contains "rights-creating" language that gives rise to an enforceable federal right. (Pl. Nov. 3, 2015 Letter, ECF No. 18 at 3.) Plaintiff points to the use of the terms "individual" and "provider" in the statute, and cites *Ball v. Rodgers,* 492 F.3d 1094, 1103 (9th Cir.2007) for the proposition that the use of those terms is often sufficient to support a privately enforceable right. (Pl. Nov. 3, 2015 Letter, ECF No. 18, at 2–3.) Defendants, on the other hand, argue that the language of subsection 32 "speaks only to the states, in terms of regulating institutional policy and practice in the creation of their Medicaid plans." (Def. Nov. 12 Letter, ECF No. 19 at 3.)

 The Court agrees with the defendants. The Supreme Court has "made clear that unless Congress speaks with a clear voice, and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." *Gonzaga,* 536 U.S. at 280, 122 S.Ct. 2268 (internal quotations omitted). For a statute to confer such a right, "its text must be 'phrased in terms of the person benefitted.'" *Id.* at 284, 122 S.Ct. 2268 (quoting *Cannon v. University of Chicago,* 441 U.S.

---

**3.** For purposes of the private right analysis alone, the Court adopts plaintiff's interpretation of the statute. TSLI contends that under subsection 32, "individuals and service providers are entitled to be reimbursed for the full amount of Medicaid benefits available for the treatment provided" but, as the cases discussed above clearly illustrate, subsection 32 addresses the practice of "factoring" Medicaid receivables. (Pl. Nov. 3, 2014 Letter, ECF No. 18 at 3.) The Court discusses the plausibility of plaintiff's claim, *supra,* at Section II.B.2.

677, 692 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).[4] After *Gonzaga*, it is not enough that "the plaintiff falls within the general zone of interest that the statute is intended to protect" to find a privately enforceable right. *Id.* at 283, 122 S.Ct. 2268.

Applying these principles here, it is clear that § 1396a(a)(32) does not confer a right upon TSLI. The statute does not compel payment to healthcare providers, as TSLI argues. On the contrary, the text is phrased conditionally, in the negative: the state's plan must provide that "no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or otherwise ..." In other words, the provision states that *if* a payment is made under the plan, then it must be made to the provider alone. Thus, the provision does not require the state to issue any payment at all; instead, the provision places restrictions on who can receive such a payment. In other words, there is no rights-conferring language in the provision. Absent such language, the Court concludes that this provision does not confer a federal right upon medical providers.

The cases TSLI relies upon do not compel a different conclusion. Plaintiff cites various cases in which courts held that the use of the term "individual" (which appears in the text at issue here) created a federal right. (Pl. Nov. 11, 2014 Letter, ECF No. 18 at 2). As defendants point out, all of the cases cited in plaintiff's letter brief addressed provisions of the Medicaid Act that conferred various benefits upon Medicaid recipients, not Medicaid healthcare providers. *See, e.g., Ball,* 492 F.3d at 1108 ("individuals" refers to Medicaid recipients who qualify for benefits); *Watson v. Weeks,* 436 F.3d 1152, 1159 (9th Cir.2006) ("individuals" refers to financially eligible persons in need of nursing care); *Sabree v. Richman,* 367 F.3d 180, 190 (3d Cir.2004) (discussing provisions enumerating entitlements to medical care for "all eligible individuals"); *Bryson v. Shumway,* 308 F.3d 79, (1st Cir.2002) (discussing procedural protections afforded to "eligible individuals" denied care). Thus, when the statutory provisions at issue in those cases spoke about "individuals," they referred to the true beneficiaries of the Act, and not to providers. This distinction is important, and the Court declines to hold that the term "individual" is a kind of magic word

4. Although the parties do not dispute that *Gonzaga* must govern the Court's analysis, the Court pauses for a moment to explain that plaintiff's reliance upon *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) is misplaced. In that case, the Court held that a different subsection of 42 U.S.C. § 1396a(a) created a privately enforceable right. As the Second Circuit has noted, since *Wilder* the Supreme Court has "appeared to be increasingly reluctant to find § 1983–enforceable rights in statutes which ... set forth their requirements in the context of delineating the obligations that accompany participation in federal spending programs." *Kapps v. Wing,* 404 F.3d 105, 127 (2d Cir.2005) (citations omitted). Whether one characterizes *Gonzaga* as limiting, clarifying, or rejecting *Wilder,* it cannot be disputed that the Court's jurisprudence has purposefully distanced *Wilder* in favor of stricter standards. In any event, if this Court were to read *Wilder* without the gloss of *Gonzaga,* the Court's conclusion would not be altered. The provision at issue in *Wilder* required state Medicaid plans to provide for payment of services for the mentally retarded through the use of rates that were reasonable and adequate to meet the provider's costs. *Wilder,* 496 U.S. at 503, 110 S.Ct. 2510. That is the precisely the sort of specific, monetary entitlement that gives rise to an enforceable right. By contrast, the provision at issue here governs the administration of payments—*i.e.,* to whom they can be disbursed, and whether they can be assigned to third parties. As such, these requirements do not confer an entitlement.

that in all circumstances creates a federal right.

As TSLI correctly points out, the only federal court to consider the present issue held that providers may enforce § 1396a(a)(32) through Section 1983. *See AHS Tulsa Regional Medical Center v. Fogarty*, No. 07–CV–338, 2007 WL 3046441, at *2–3, 2007 U.S. Dist. LEXIS 76889, at *5–7 (N.D.Okla. Oct. 16, 2007). The Court has carefully reviewed that opinion, and finds it unpersuasive. The court's decision rested upon the following observation:

> Section 1396a(a)(32) creates a binding obligation for states to pay "the person or institution providing such care or service." It would make little sense to give providers a right to receive payment without also providing a method to recover payment.

*Id.* at *2, 2007 U.S. Dist. LEXIS 76889, at *6. As this passage illustrates, the court's logic depended upon the erroneous premise that § 1396a(a)(32) confers "a right to receive payment." *Id.* The court provided no explanation for this important assumption. As this Court has already discussed, § 1396a(a)(32) is clearly a prohibition on factoring. It does not follow that this prohibition also confers upon providers the broader right to receive payment.

The Court concludes, from both the language of the statute and the fact that the clear purpose of § 1396a(a)(32) was to prohibit factoring, that no private right is conferred by that provision. In the absence of a federal right, TSLI cannot bring suit under § 1983. Accordingly, TSLI's § 1983 claim (the only claim in this case) must be dismissed.

### 2. Failure to State a Claim

█ Even if TSLI could enforce § 1396a(a)(32) through § 1983, the complaint does not plausibly allege that there is anything at all to enforce in this action, because the conduct of which TSLI complains is not encompassed by the "anti-factoring" prohibition of the Social Security Act. To state the obvious, the complaint does not allege that the State is paying TSLI's Medicaid revenues to some third party. Instead, the complaint alleges that the State is seeking the return of funds from payments that were previously disbursed. As was discussed above, the Court rejects TSLI's argument that subsection 32 confers a broad entitlement to payment. To the extent TSLI argues, in the alternative, that New York is the prohibited third-party-recipient in this case, that argument is creative, but ultimately not persuasive. *Cf. DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.*, 384 F.3d 338, 350 (7th Cir. 2004) (holding that the similarly worded anti-factoring provision of the Medicare statute "stands only for the proposition that Medicare funds cannot be paid directly by the government to someone other than the provider, but it does not prohibit a third party from receiving Medicare funds if they first flow through the provider.").

Although the Court does not pass on the overall lawfulness of the State's efforts to recapture TSLI's Medicaid income, this much is clear: none of the conduct described in the complaint violates § 1396a(a)(32). As such, even if plaintiff could enforce § 1396a(a)(32) through Section 1983, the complaint fails to state a plausible claim. Accordingly, the complaint must be dismissed.

### C. Leave to Amend

Having concluded that plaintiff has failed to state a plausible claim under Section 1983, the Court has considered whether TSLI should be afforded an opportunity to amend the complaint. Rule 15(a)(2) of

the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." As a threshold matter, plaintiff has not requested an opportunity to re-plead in its opposition. In any event, any such attempt would be futile.

In the matter at bar, plaintiff has failed to state a cause of action under Section 1983. Better pleading would not alter this defect, because plaintiff has not identified any federal right that could be actionable in this case. Leave to amend is therefore denied. *See, e.g., Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (holding that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint).

### III. CONCLUSION

For the reasons set forth herein, the Court grants the defendants' motion to dismiss the complaint in its entirety. The Clerk of Court shall close the case.

SO ORDERED.