(No. 51239.-

# THE BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 150 *et al.*, Appellees, v. THE CITY OF PEORIA, Appellant.

*Opinion filed June 8, 1979.—Rehearing denied September 28, 1979.*

470

David L. Thomas and Brian M. Nemenoff, of Peoria, for appellant.

Wm. McD. Frederick, Julian E. Cannell and Phillip B. Lenzini, of Peoria (Kavanagh, Scully, Sudow, White & Frederick, of counsel), for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

This is an appeal to this court from the circuit court of Peoria County under our Rule 302(b) (58 Ill. 2d R. 302(b)). The circuit court entered a declaratory judgment holding that certain tax ordinances of the city of Peoria were not enforceable against the plaintiffs, the board of education of School District No. 150, Peoria, and the Pleasure Driveway and Park District of Peoria.

On June 13, 1978, the city of Peoria, a home rule unit, adopted "An Ordinance Amending Appendix J of the Peoria City Code," which related to taxes upon the witnessing or participating in an amusement. The amendment imposed a tax of 2% on all fees charged. On the same day, the city also adopted "An Ordinance Amending Appendix J, Article II," of the Peoria City Code, which related to a tax upon the privilege of purchasing food or alcoholic beverages served at a restaurant or tavern. This amendment imposed a tax of 2% upon the privilege of purchasing food or alcohol. Each ordinance provided that

the ultimate incidence of and liability for the payment of the tax should be upon the consumer.

Each ordinance also provided that "[i]t shall be the duty of the owner, manager or operator" of the facility "to act as trustee for and on account of the city, and to secure said tax from the consumer" and "pay over to the city comptroller said tax under procedures prescribed ***." One ordinance authorizes the comptroller to enter the premises of the owner "for inspection and examination of books and records" and provides that it shall be unlawful for any person to prevent, hinder or interefere with the comptroller in the discharge of his duties. The ordinance states that "[i]t shall be the duty of every owner to keep accurate and complete books and records to which the comptroller *** shall at all times have full access, which records shall include a daily sheet showing: (1) The number of admission fees charged within the twenty-four hour period, and (2) The actual amusement tax receipts collected for the date in question."

The ordinance then provides that the owner "shall file tax returns showing tax receipts received on forms prescribed by the comptroller. The returns shall be due on or before the 30th day of each calendar month succeeding the end of the monthly filing period." The ordinance provides for the filing periods and requires the owner to pay to the comptroller all taxes due for the period to which the tax return applies. It further provides: "If for any reason any tax is not paid when due, a penalty at the rate of one (1) percent per thirty-day period or portion thereof *** shall be added and collected." The mayor is given the authority, after a hearing, to suspend or revoke all city licenses of any owner who has wilfully avoided payment of the tax, and fines may be imposed for not less than $200 nor more than $300 for the first offense on "[a]ny person found guilty of violating, disobeying, omitting, neglecting, or refusing to comply with *** any

of the provisions" of the ordinance. Repeated offenses are punishable by incarceration in the county jail for a term not to exceed six months.

Article VII, section 6(a), of the Constitution of 1970 provides that a home rule unit may exercise "any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." This case does not challenge the general authority of the city of Peoria as a home rule unit to enact these taxing ordinances. The contention in this case is that the taxes cannot be made applicable to the two public bodies that are plaintiffs in this case, the school district and the park district.

Certain classes of property have been exempt from taxation by statute in this State. School district property and park district property are among those classes included. (Ill. Rev. Stat. 1977, ch. 120, pars. 500.1, 500.18.) Although in some States a presumption exists that the property of certain public bodies is exempt from taxation, this State has not applied such a presumption. In fact, our courts have held that all property is subject to taxation unless some law specifically exempts it, and the statutes are to be construed strictly in favor of the taxing body and against exemptions. (*People v. Deep Rock Oil Corp.* (1931), 343 Ill. 388, 400; *City of Mattoon v. Graham* (1944), 386 Ill. 180, 184-85. Compare *City of Idaho Falls v. Pfost* (1933), 53 Idaho 247, 250-60, 23 P.2d 245, 246-49.) The strict construction rule is true regardless of whether a private or public entity claims an exemption. The exemptions granted to school districts and to park districts are exemptions from property taxation.

However, in this case the taxes that are imposed by the ordinances are not taxes on property; rather, they are excise taxes and "are distinguished from property taxes by

one being a tax directly upon the property itself, and the other as a charge for a privilege arising from the use of the property ***." (*Village of Lombard v. Illinois Bell Telephone Co.* (1950), 405 Ill. 209, 213-14.) There are certain exemptions from nonproperty taxes that would apply to schools and to park districts. For example, the Retailers' Occupation Tax Act exempts from gross receipts of the retailer sales made to governmental bodies. Ill. Rev. Stat. 1977, ch. 120, par. 441.

The Use Tax Act also exempts governmental bodies from paying the use tax on personal property purchased at retail. (Ill. Rev. Stat. 1977, ch. 120, par. 439.3.) However, it would be contrary to this State's rule of strict construction concerning tax exemptions to extend these statutory exemptions to the taxes imposed by the ordinances under consideration. The taxes here involved are not levied on the property of these districts or on a retail sale to or a use by either district. These taxes do not therefore fall within the scope of a specific tax exemption and are not invalid as applied to the activities sponsored by the school and by the park district.

Each of these ordinances specifically provides that the ultimate incidence of the tax is imposed on the participant, observer or purchaser, not upon the party collecting the funds. The amount due under the tax need simply be added to the price charged. Similarly, in *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, this court noted that the ultimate incidence of a parking lot tax fell upon the person occupying the space, though the money was remitted to the city by the lot owner. In *S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, it was held that the ordinance clearly imposed the cigarette tax on the ultimate purchaser of the cigarettes, and in *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, it was explained that even though the Cook County liquor tax would be difficult to pass on, it was "hardly impossible" to make the consumer pay the tax. (See also

*Pennwalt Corp. v. Metropolitan Sanitary District* (N.D. Ill. 1973), 368 F. Supp. 972, 978; Michael & Norton, *Home Rule in Illinois: A Functional Analysis,* 1978 U. Ill. L.F. 559, 591.) The amusement tax is imposed on the consumer as an addition to the admission charges. The food tax is imposed on the consumer as an addition to the charge for his meal or drink. These city taxes fall on the consumer, and cannot be considered as taxes imposed on another governmental unit.

Having determined that the primary obligation of these taxes falls on the consumer and that the ordinances are not *per se* invalid when applied to activities sponsored by other units of local government, we must consider a subsidiary question, though one that is controlling insofar as the school district is concerned. Do the requirements of the ordinances pertaining to the collection of the taxes, the keeping of records, the examination of books and records by the comptroller, the imposition and conferring of trustee duties and powers in the collection and remittance of the tax, the imposition of fines and penalties and other duties, powers, and responsibilities constitute impermissible regulation of the school district and the park district by the city of Peoria?

This court has stated that under section 1 of article VIII of the Constitution of 1870, the people of this State have given to the legislature "all power over the public schools and school system," subject only to the two limitations of section 1 of article VIII; the schools must be free and they must be open to all without discrimination. (*People v. Deatherage* (1948), 401 Ill. 25, 53.) In *Spaulding v. Illinois Community College Board* (1976), 64 Ill. 2d 449, this court, after citing *People v. Deatherage,* stated that, under section 1 of article X of the 1970 Constitution, the legislature possesses similar authority concerning school matters and spoke of the pervasive interests of the State in education. Again, in *Cronin v.*

*Lindberg* (1976), 66 Ill. 2d 47, this court reaffirmed the supremacy of the legislature with regard to schools and school districts under the 1970 Constitution. Pursuant to the constitutional mandate of the 1870 Constitution and of the 1970 Constitution, the legislature has enacted a comprehensive scheme for the creation, management and operation of Illinois schools. The powers, duties and obligations of school boards are described in detail by the statutes. (Ill. Rev. Stat. 1977, ch. 122, pars. 10—1 through 10—23.9.) Thus the legislature, pursuant to the constitutional mandate, exercises plenary power over the Illinois school system. We need not decide whether health and safety ordinances of home rule cities are enforceable against school districts. See generally *County of Cook v. City of Chicago* (1924), 311 Ill. 234, 242-45; *City of Chicago v. Board of Education* (1927), 246 Ill. App. 405, 410-11; D. Mandelker & D. Netsch, *State and Local Government in a Federal System* 418-23 (1977), 10 Ill. L. & Prac. *Cities, Villages and Other Municipalities* sec. 1114 (1955); 13 Am. Jur. 2d *Buildings* sec. 7 (1964); 68 Am. Jur. 2d *Schools* sec. 70 (1973).

In *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, a law library surcharge imposed by Cook County under its home rule power on the first pleading or other appearance of parties to a civil action was invalidated. After an examination of the constitutional and legislative scheme for a statewide court system, it was noted that "[a]rticle VI [the judicial article] of the 1970 Constitution does not contemplate nor does it authorize the exercise of any control over or permit the imposition of a burden on the judicial system by any local entity." *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 542.

As in *Ampersand,* the Peoria tax ordinances impose duties upon the board of education of the Peoria school district that are not authorized. The provision concerning the keeping of records, the examination of the books, the

collection of the tax, the periodic payment of the tax to the city, the filing of periodic reports with the city, the holding of the taxes collected as a trustee for the city and the various other requirements of the ordinances impose upon the board of education duties over and above those that have been imposed upon the board by the legislature. They also confer on the school district powers that they have not been given by the statute, such as the power to collect taxes on behalf of the city of Peoria and to hold those taxes as trustee. As applied to school district No. 150, the two ordinances in question constitute an unauthorized regulation of the school district contrary to section 1 of article X of the Constitution of 1970.

The General Assembly has long provided for the creation of park districts by way of special legislation. In 1893 legislation was enacted for the first time permitting the formation of park districts under a general law. In 1947 the General Assembly enacted a bill codifying the various laws pertaining to park districts of less than 500,000 inhabitants, the short title of which was "The General Park District Code." That title was changed in 1951 to "The Park District Code." (Hoff, *History of the Park District Code,* Ill. Ann. Stat., ch. 105, at xiii (Smith-Hurd 1952).) Although the General Assembly, by this act, codified certain prior laws pertaining to park districts, it did not thereby manifest an intent to assert an exclusive statewide dominion over parks or park districts. In fact, in the Illinois Municiple Code of 1961 local municipalities are likewise authorized to establish and maintain parks. (Ill. Rev. Stat. 1977, ch. 24, par. 11—98—1 *et seq.*; par. 11—99—1 *et seq.*; par. 11—100—1 *et seq.*) We cannot therefore say that there exists a pervasive statewide interest in parks and park districts which prohibits a home rule unit from legislating in such a manner as to impose incidental obligations and burdens upon park districts. (See *Mulligan v. Dunne* (1975), 61 Ill. 2d 544; *Town of*

*Cicero v. Fox Valley Trotting Club* (1976), 65 Ill. 2d 10.) We therefore hold that the ordinances in question do not constitute an unauthorized regulation of the plaintiff park district.

The judgment of the circuit court of Peoria County is affirmed as to the plaintiff school district. The judgment of the circuit court of Peoria County is reversed as to the plaintiff park district.

*Affirmed in part and*
*reversed in part.*