CHICAGO TEACHERS UNION, etc., et al., Plaintiffs,

v.

BOARD OF EDUCATION OF the CITY OF CHICAGO and Ruth B. Love, Defendants.

No. 83 C 4803.

United States District Court, N.D. Illinois, E.D.

Aug. 10, 1983.

Supplemental Opinion Aug. 11, 1983.

Michael A. Radzilowsky, DeJong, Poltrock & Giampietro, Chicago, Ill., for plaintiffs.

Robert C. Howard, Hartunian, Futterman & Howard Chtd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Chicago Teachers Union, Local 1 AFT/AFL–CIO ("CTU") and several of its officers sue the Board of Education of the City of Chicago ("Board") and Chicago Superintendent of Schools Ruth Love ("Love"), alleging Board repudiated its collective bargaining agreement with CTU (the "Agreement") by adopting certain provisions of the desegregation plan (the "Plan") approved by this Court in *United States v. Board of Education of the City of Chicago,* 554 F.Supp. 912 (N.D.Ill.1983).[1] This Court sua sponte dismisses CTU's Complaint under Fed.R.Civ.P. ("Rule") 12(h)(3) for lack of subject matter jurisdiction.

Complaint ¶ 9 focuses on the Plan provision establishing "Effective Schools Programs" at several schools. In part such programs call for the selection of teachers who would be exempt from seniority-based job displacement[2] (Plan at 285). CTU alleges (Complaint ¶¶ 8, 10–11) (1) exemption of such teachers from reassignment on the basis of seniority is a repudiation of Agreement Art. 42–3 and (2) Board acted without prior notice to CTU, as required by several Agreement provisions. CTU also alleges (Complaint ¶¶ 12–13) Board's acts (1) "constitute a taking of property without just compensation and due process of law" and (2) violate "the public policy of the United States."

1. This action was originally assigned to this Court's colleague Judge Marshall. Board promptly moved this Court for a finding under General Rule 2.31C of this District Court that this action is related to the *United States* desegregation case (No. 80 C 5124). This Court granted that motion earlier today:

    1. Both this action and the *United States* case are pending.

    2. Handling of both cases by this Court would likely result in a substantial saving of judicial time.

    3. Even without the present ruling the *United States* case would not be delayed by the finding of relatedness.

    4. Were this action viable, whatever common questions of fact exist would be susceptible to resolution in a joint hearing.

See General Rule 2.31B. Indeed CTU itself suggests (Complaint ¶ 2) its action is related to the *United States* case and consolidated cases.

2. Such displacement might for example occur in the event of general teaching staff reductions or changes in a particular school's program.

In real world terms CTU sues for breach of an employer-labor organization contract, the kind of action this Court usually sees brought under Labor-Management Relations Act ("LMRA") § 301, 29 U.S.C. § 185 ("Section 301"). Indeed the Supreme Court just recently decided a similar Section 301 action, *W.R. Grace and Co. v. Local Union 759*, —— U.S. ——, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). There an employer sued a union under Section 301 to overturn an arbitrator's award in favor of employees who had been laid off (1) in violation of seniority provisions but (2) as part of the employer's effort to abide by the terms of a conciliation agreement reached with the Equal Employment Opportunity Commission in a sex-discrimination proceeding. *Id.* at 2180–82.[3]

■ But Section 301's right-of-action and jurisdictional route is not available to CTU here. LMRA §§ 501(3) and 101(2), 29 U.S.C. §§ 142(3) and 152(2), define "employer" to exclude "any State or political subdivision thereof." Board is the creature of state statute, Ill.Rev.Stat. ch. 122, §§ 34–1 et seq., and an agency of the State of Illinois. *City of Chicago v. Board of Education of City of Chicago*, 246 Ill.App. 405, 408 (1st Dist.1927). *See also Board of Education of School District No. 150 v. City of Peoria*, 76 Ill.2d 469, 475–76, 31 Ill.Dec. 197, 200, 394 N.E.2d 399, 402 (1979); *Board of Education of the City of Chicago v. Chicago Teachers Union, Local 1, American Federation of Teachers*, 26 Ill.App.3d 806, 810, 326 N.E.2d 158, 161 (1st Dist.1975). Thus the Agreement is not one "between an

employer and a labor organization" within the meaning of LMRA.[4]

So CTU has tried to cast its jurisdictional net widely (Complaint ¶ 1). It has come up with some strange fish.

■ Obviously the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, does not grant this Court jurisdiction over CTU's action: That Act by its very terms creates only additional *remedies* in cases already "within [a federal court's] jurisdiction." *See* 10A Wright, Miller and Kane, *Federal Practice and Procedure* § 2766, at 731–32 (1983) and cases cited. And although Complaint ¶ 1 also "invoke[s]" this Court's jurisdiction "under the Fifth and Fourteenth Amendments . . . and Title 42, United States Code, Secs. 1981, 1983 and 1988,"[5] CTU's factual allegations must support that invocation by showing federal question or civil rights *claims* that would fit under the appropriate jurisdictional statutes, 28 U.S.C. §§ 1331 ("Section 1331") and 1343 ("Section 1343").

■ As to Section 1331's general federal question jurisdiction, CTU's action will not fit for one simple and one more complex reason:

1. In simple terms, the Complaint assails Board for a contract breach that raises no federal question at all. CTU cannot escape that fact by arguing it expects Board to raise a "federal defense" based on its obligations under the Plan: Under the long-established "well-pleaded complaint" rule, a "plaintiff's statement of his own cause of action"

---

**3.** Given the conceptual parallel between the employer's claim in *W.R. Grace* and CTU's claim here, it is scarcely surprising Complaint ¶ 13 invokes *W.R. Grace* to evidence the "policy of the United States" on which it seeks to rely. In this case, Paragraph 13 is not a lucky number for CTU. As the later discussion indicates (see text following n. 6), the policy exemplified and implemented by *W.R. Grace* really cuts the other way, for Congress deliberately chose to make that policy—at least so far as federal courts were given jurisdiction to enforce it—inapplicable to a governmental employer like Board (see the next paragraph in the text of this opinion).

**4.** Of course Love is not an "employer" either, so her presence as a named defendant does not alter that result.

**5.** Two of those five references are plainly inappropriate:
    1. Board and Love could not have violated the Just Compensation Clause of the Fifth Amendment, which restricts only the federal government and its officers, *Barron v. Baltimore*, 32 U.S. (7 Pet.) 243, 250–51 [8 L.Ed. 672] (1833).
    2. 42 U.S.C. § 1988 deals only with awards of attorneys' fees in civil rights actions and has nothing whatever to do with jurisdiction.

must be based on federal law, without reference to anticipated federal defenses. *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).

2. Even were *Mottley* and its many progeny to be (impermissibly) ignored, at a minimum there is a serious question whether CTU could show a federal question: There is likely no "federal defense" here at all. Although the Plan was developed under a Consent Decree (the "Decree") entered and approved in a federal action, 554 F.Supp. at 913 n. 1, the Decree itself is really a settlement agreement and therefore a state-law contract. See the discussion in *Strama v. Peterson,* 96 F.R.D. 198, 199–201 (N.D.Ill.1982) and cases cited there. Although this Court has jurisdiction to *enforce* the Decree (either because it was incorporated within an operative Order of this Court or because the United States would be a party to any enforcement action, *see* 28 U.S.C. §§ 1345–46), the Decree as such is still a contract under state not federal law, and it thus creates no *federal* substantive rights. It is not at all clear how Board's possible defense to CTU's claim, if based on the Decree, would amount to its "enforcement" and thus come within this Court's independent federal jurisdiction. Consequently no general federal question jurisdiction exists here, whether this Court focuses on CTU's Complaint *or* on Board's putative "defense."

■ So CTU's last possible refuge is Section 1343, "invoked" for alleged violations of the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983 ("Sections 1981 and 1983"). Section 1981 is plainly of no use to CTU, because that section guarantees certain rights equal to those "enjoyed

by white citizens," and CTU and its officers do not allege any racial motivation in Board's actions as to the Agreement.[6] And the Fourteenth Amendment gives CTU no more comfort, for no *Bivens*-like right of action may be implied directly under that Amendment. *Cf. Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 2416–17, 76 L.Ed.2d 648 (Stevens, J., for the Court) and 2417–18 (Marshall and Blackmun, JJ., concurring) (1983) (declining to imply right of action under the Constitution where Congress has legislated remedial statutes). CTU is thus left with Section 1983 or nothing.[7]

That final hope implicates the recent decision of our Court of Appeals in *Vail v. Board of Education of Paris Union School District No. 95,* 706 F.2d 1435 (7th Cir.1983). *Vail* was a Section 1983 action by a football coach against a local school board that (without a hearing) terminated the coach's employment contract after one year, despite the board's original assurance the contract would be extended a second year. *Id.* at 1436. Under those circumstances the Court held (*id.* at 1438):

> [T]he Board deprived Vail of his legitimate expectation of continued employment in terminating him without cause before the expiration of his employment period, and ... such deprivation is a violation of due process and actionable under the Civil Rights Act.

In a vigorous dissent Judge Posner argued (*id.* at 1449):

> This court holds that the board's action violates section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, because: the Fourteenth Amendment forbids the state, of which the school board is an arm, to deprive anyone of life, liberty, or property without due process of law; a contract

**6.** That point would be dispositive even if it is assumed (1) CTU, the party to the Agreement, is a protected "person" under Section 1981, (2) an alleged *breach* of contract implicates the right to "enforce contracts" under Section 1981 and (3) Board, as the alleged contract breaker, is suable under Section 1981. Only that last assumption is defensible under the case law. *See Yarbrough v. Illinois Department of Mental Health,* 538 F.Supp. 414, 417 (N.D.Ill.1982)

(holding state agency suable under Section 1981).

**7.** Although there is substantial doubt Board is suable under Section 1983, *see Yarbrough,* 538 F.Supp. at 416–17, Love's presence as a named defendant gives CTU a potentially proper Section 1983 target. *See Children's Memorial Hospital v. Illinois Department of Public Aid,* 562 F.Supp. 165, 167 n. 1 (N.D.Ill.1983).

right is a species of property and was taken away here without a hearing; therefore the state acted unconstitutionally. If this logic is applied unflinchingly, any time a school board or any other local government body breaks a contract without first holding a hearing, the contractor—who need not be an employee, who could be a supplier of paper clips— can get damages in federal court.

True, CTU does not seek damages here, but the underlying Section 1983 claim issue is posed regardless of what particular Section 1983 remedy CTU seeks. CTU is no mere supplier of paper clips, but in effect it seeks—as Judge Posner feared—to avail itself of an "unflinching" application of the reasoning of our Court of Appeals. After all, the surviving heart of CTU's Complaint is its allegation (Complaint ¶ 12) Board's contract repudiation deprived CTU of property without due process of law.

Judge Posner may well be correct (*Vail,* 706 F.2d at 1450–52) the "property" protected by the Due Process Clause does not encompass "a mere contract right." Certainly it would be ironic if the courts now embraced a broad concept of "property" that harks back to the days when identification of a property right (under the guise of "liberty of contract") meant the virtual exclusion of the kind of government regulation all courts today accept without question. *See Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905).

There is also some logical force to Judge Posner's alternative argument (*Vail,* 706 F.2d at 1452–53) that a mere *breach* of contract does not itself constitute state "deprivation" of property.[8] As Judge Posner pointed out, Vail sought damages and Illinois law offered him appropriate redress.

To Judge Posner that available state court remedy (which a federal court could not better) must negate any state "deprivation," else *every* contract breach by the State or its agencies might support a Section 1983 claim for damages.

But this Court need not enter into the *Vail* debate, because both judges making up the *Vail* majority emphasized they addressed only the special case of state termination of *employment* contracts. *Id.* at 1438 (Wood, J., for the Court) and 1441–45 (Eschbach, J., concurring). Whatever may be said of that distinction as an *original* matter (*see* Judge Posner's dissent, *id.* at 1449), *Vail* does not compel the conclusion every state-agency breach of *any* kind of contract may undergird a Section 1983 claim. CTU's collective bargaining agreement, though it is surely employment-related, does not fit under the rubric of individual enforcement of protected employment "property" interests for which the courts have carved out a kind of historical exception.[9] Accordingly this Court is not compelled by *Vail*'s holding to find CTU has stated a Section 1983 "contract" claim here.

CTU seeks (Prayer ¶¶ A–C) declaratory and injunctive relief against Board's alleged violation of its employees' "contractual and statutory rights." In substance CTU's Complaint is no different from other collective bargaining claims it has pressed in state court, seeking similar relief. *See, e.g., Board of Education of the City of Chicago v. Chicago Teachers Union, Local 1,* 88 Ill.2d 63, 58 Ill.Dec. 860, 430 N.E.2d 1111 (1981). Here CTU alleges violation or repudiation of a state-law contract entered into by a public body empowered to act under state law. CTU assails that public body for obligating itself in an allegedly inconsistent

---

**8.** Judge Posner's third alternative, that no predeprivation process was due *Vail,* 706 F.2d at 1453–56, is not applicable here because the Agreement allegedly itself required notice and consultation—so breach of the Agreement remains the core of CTU's claim.

**9.** As already indicated, the thrust of CTU's Complaint is to challenge teacher reassignments assertedly affected by the Plan's overriding of seniority. It is perhaps conceivable

teacher terminations might also be impacted by the same provisions at some future date. But that speculative possibility (as well as the notion of representative enforcement by CTU, rather than an individual complaint by an affected teacher) is one or more large steps removed from the direct suit by a terminated teacher represented by *Vail* and the line of cases on which it relies.

way by entering into another state-law contract. Little wonder, then, CTU has stated only a state-law claim for which there is no identified independent basis for federal jurisdiction.[10]

*Conclusion*

CTU's Complaint is dismissed under Rule 12(h)(3) for lack of subject matter jurisdiction.

### SUPPLEMENT TO MEMORANDUM OPINION AND ORDER

On August 10 this Court issued its memorandum opinion and order (the "Order") dismissing the Complaint in this action under Fed.R.Civ.P. ("Rule") 12(h)(3). Because that Rule speaks of dismissal of the action itself rather than simply the Complaint, but because this Court deliberately chose the different language used in the Order, this supplement is issued to avoid any misunderstanding.

As the Order reflects, this Court found the Complaint wanting in federal jurisdictional terms—as Rule 12(h)(3) puts it, "the court lacks jurisdiction of the subject matter." And it did so sua sponte, which is one of the ways Rule 12(h)(3) may be called into play. Because there was no motion or other responsive pleading pending, Rule 12(b)(6) did not apply by its terms (though otherwise it might perhaps have been called into play).

But this Court is aware that, though it sought to ring all the possible changes in the Order, CTU might conceivably have other matters to present that could entitle it to federal court consideration of its claims. For that reason dismissal of the Complaint rather than the entire action seemed appropriate.[1] To create complete

certainty, this supplement provides that if CTU does not elect to replead—to file an Amended Complaint—on or before August 26, 1983, this Court will enter a further and final order on that date dismissing the entire action.

perform a contract by a state does not raise a constitutional issue, but when a state uses its legislative authority to impair a contract a constitutional claim is stated"). No such "legislative" action by Board (ascribable to the State) is alleged here.

---

**10.** CTU's Complaint properly makes no reference to the Constitution's Contract Clause, Art. I § 10, cl. 1. That Clause applies only to state legislative enactments that "impair[] the obligation of contracts." *See United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 23–32, 97 S.Ct. 1505, 1518–1522, 1523, 52 L.Ed.2d 92 (1977); *E & E Hauling, Inc. v. Forest Preserve Dist. of DuPage County, Ill.*, 613 F.2d 675, 678 (7th Cir.1980) ("Mere refusal to

**1.** In that way no final order has yet been entered.