(Nos. 60879, 61058 cons.—

THE CHICAGO PARK DISTRICT, Appellant, v. THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed January 23, 1986.*

8

Rick Halprin, of Chicago (Melbourne A. Noel, Jr., of Laser, Schostok, Kolman & Frank, of counsel), for appellant.

James D. Montgomery, Corporation Counsel, of Chicago (Philip L. Bronstein, of counsel), for appellees.

Ronald J. Clark, of Chicago, for *amicus curiae* Chicago Yachting Association.

JUSTICE WARD delivered the opinion of the court:

On December 27, 1983, the city council of Chicago enacted the "Chicago Boat Mooring Tax" ordinance, which imposed a tax on "any watercraft moored or docked for a fee" within the limits of the city of Chicago in the amount of 50% of the mooring fee. Under the ordinance, persons who pay the mooring fee to the Chicago Park District (District) are directly liable to the city for the tax. On January 24, 1984, the District filed a complaint for declaratory judgment in the circuit court of Cook County to have the mooring tax declared unconstitutional, and the court on February 17, 1984, denied its motion for a temporary restraining order to enjoin collection of the tax. The District's motion for a preliminary injunction was denied on February 22, 1984, and it filed an interlocutory appeal from the denial to the ap-

pellate court. The circuit court, on its own motion, later enjoined the city from collecting the tax, apparently because the tax due date would be reached before the circuit court had decided the declaratory judgment action.

On April 26, 1984, the trial court dismissed the declaratory judgment complaint, from which dismissal the District also appealed to the appellate court. That court on May 31, 1984, entered an order staying the collection of the tax until all appeals concerning the ordinance had been decided. On August 29, 1984, the appellate court, without referring to the circuit court's dismissal of the District's complaint, affirmed the circuit court's denial of a preliminary injunction. We granted the District's petition for leave to appeal from that affirmance under our Rule 315 (92 Ill. 2d R. 315). The District moved this court for direct appeal of the circuit court's dismissal of the declaratory judgment complaint under Rule 302(b) (94 Ill. 2d R. 302(b)). We allowed the motion and consolidated the two appeals.

The District contends that the ordinance is unconstitutional because: (1) the city, a home rule unit, does not have authority under the Constitution to impose the mooring tax; and (2) the size or amount of the tax represents an impermissible regulation of or interference with District operations.

Article VII, section 6, of the Constitution of Illinois defines the powers of home rule units. (Ill. Const. 1970, art. VII, sec. 6.) Section 6(a) states:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." (Ill. Const. 1970, art. VII, sec. 6(a).)

That general grant of power is limited by subsections following section 6(a). With reference to taxation, two

subsections are pertinent. Section 6(e) provides that, in the absence of an authorizing statute, a home rule unit may not "license for revenue or impose taxes upon or measured by income or earnings or upon occupations." (Ill. Const. 1970, art. VII, sec. 6(e).) Section 6(g) states that the General Assembly "may deny or limit" a home rule unit's "power to tax" by "the vote of three-fifths of the members elected to each house." Ill. Const. 1970, art. VII, sec. 6(g).

The District argues that harbors in Chicago do not pertain to the "government and affairs" of the city, and, therefore, the "moored watercraft" cannot be taxed under the Constitution's grant of power in section 6(a). The District says there are statutes that, it argues, demonstrate a legislative intent to exclude harbors from the "government and affairs" of the city. Section 24 of "An Act in relation to the regulation of rivers, lakes and streams ***," for instance, provides that "[t]itle to the bed of Lake Michigan and all other meandered lakes *** is held in trust for the benefit of the People of the State of Illinois ***." (Ill. Rev. Stat. 1981, ch. 19, par. 71.) Section 26 of this act states that the "Department of Transportation shall *** have full and complete jurisdiction of every public body of water in the State of Illinois." (Ill. Rev. Stat. 1981, ch. 19, par. 73.) Section 18 of this act prohibits the construction of "any wharf, pier, *** harbor or mooring facilities" without approval by the Department of Transportation. (Ill. Rev. Stat. 1981, ch. 19, par. 65.) We do not consider that the simple existence of these statutes shows that the city was deprived of authority to enact the ordinance.

The Constitution provides that "[p]owers and functions of home rule units shall be construed liberally." (Ill. Const. 1970, art. VII, sec. 6(m).) In *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, which the District cites, this court struck down a fee requirement as being be-

yond a home rule unit's authority. An ordinance of Cook County directed the clerk of the circuit court to collect a fee or tax of $2 upon the filing of a civil suit in order to provide a fund for the maintenance of the Cook County law library. This court held that because the Constitution established a single unified court system, the "administration of justice *** is a matter of statewide concern and does not pertain to local government or affairs." (61 Ill. 2d 537, 542.) The court considered the fee to be a "condition to the right to litigate in the courts," and held that it would be an unconstitutional burden on the judicial system by a local governmental unit. (61 Ill. 2d 537, 543.) What is involved here, of course, differs from the question in *Ampersand.* In *Ampersand*, the home rule unit's tax would affect and regulate, in a sense, the statewide constitutionally provided judicial system.

The District contends too that it is supported by the holding in *Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469, which invalidated the imposition of a home rule restaurant tax on a local school district. There, this court held that to apply a city-wide 2% restaurant tax on the food sales of the local school district and park district was not *per se* unconstitutional. The court observed that the taxes "fall on the consumer, and cannot be considered as taxes imposed on another governmental unit." (76 Ill. 2d 469, 475.) It was, however, unconstitutional, the court said, to impose the burden of collecting the tax on the school district because under the Constitution the legislature "exercises plenary power over the Illinois school system," and this burden of collection amounted to regulation of the school district, a part of the State's educational system. (76 Ill. 2d 469, 476.) The *City of Peoria* court further held that it was permissible to impose the burden of tax collection on the Peoria Park District. In reaching that conclusion, the court judged that the General Assembly, by enacting leg-

islation pertaining to park districts, did not "manifest an intent to assert an exclusive statewide dominion over parks or park districts." (76 Ill. 2d 469, 477.) We consider that the presence of the statutes the District cites does not show that the legislature intended to establish and maintain "an exclusive statewide dominion" over harbors.

The District argues further that while the *City of Peoria* court held that the 2% restaurant tax was constitutional as an "incidental burden" on the Peoria Park District, a tax of 50% is more than an incidental burden. But the appellate court correctly observed that the reference to "incidental burden" was not to the amount of the tax but rather to the question of tax collection.

That the State may in a limited sense regulate harbors and that it has granted certain powers to local park districts does not prohibit a home rule unit from enacting a consumer tax regarding use of harbor facilities. "The power to regulate and the power to tax are separate and distinct powers." (*Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 17.) The tax in *City of Peoria* was not considered impermissible; the court held simply that burdening the school system with the *collection* of the tax was unconstitutional because it amounted to *regulation* of the statewide school system. Similarly, this court upheld a home rule amusement tax as applied to horse racing, despite the " 'comprehensive statutory plan for the regulation of the horse racing industry in Illinois.' " (*Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 16.) And in *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, this court upheld a home rule unit's liquor tax, despite the "extensive" regulation and taxation of the liquor industry by the State of Illinois. The court in *Fox Valley Trotting Club* recognized that article VII, section 6(a), "confers upon home rule units a broad taxing power." 65 Ill. 2d 10, 17.

The District contends too that the statutes cited above have "specifically precluded [the city] from having any governmental participation in recreational harbors." The District reasons that this legislative action made article VII, section 6(h), of the Constitution (Ill. Const. 1970, art. VII, sec. 6(h)) applicable, which section states that "[t]he General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than taxing power ***." The flaw in that contention, of course, is that section 6(h) applies to *"other than a taxing power."* The question here involves a home rule unit's taxing power, which is outside of the constitutional provision.

We would observe that the District, in focusing on statutes relating to harbors, overlooks that the harbors here are within the corporate boundaries of the city, and that the city is required to (Ill. Rev. Stat. 1981, ch. 105, par. 333.7) and does provide police protection within the area of the harbors. The city is simply taxing an event that occurs within its boundaries and in an area for which it provides services. The tax is not alleged to be an impermissible occupation tax (see Ill. Const. 1970, art. VII, sec. 6(e)), or a tax on the exempted harbor real estate (see Ill. Rev. Stat. 1981, ch. 105, par. 333.23p). The District has not shown that the city did not have the Constitution's authority to impose the tax. What this court said in *Walter Peckat Co. v. Regional Transportation Authority* (1980), 81 Ill. 2d 221, 224, is relevant:

> "Initially we note the apprehensions of the drafters of the 1970 Constitution that courts might find unintended limitations upon the taxing powers, and their declaration that any restrictions were expressly stated. (*Polich v. Chicago School Finance Authority* (1980), 79 Ill. 2d 188, 196-98; *Hoffman v. Clark* (1977), 69 Ill. 2d 402, 422-23.) The plaintiff's burden in establishing such a restriction therefore is particularly heavy in the absence of express

language so providing."

The District did not sustain its burden.

The District states that its mooring fees are not ordinary commercial transactions, but rather the legislatively authorized method of retiring its harbor revenue bonds. Bonds issued by the District relating to a particular harbor are payable solely from the operations of that harbor (Ill. Rev. Stat. 1981, ch. 105, par. 333.23q), and bondholders have a lien only on the revenue derived from the operation of that harbor (Ill. Rev. Stat. 1981, ch. 105, par. 333.28g). We do not consider that this defeats the city's constitutional authority to tax. The District charges a fee for all moorings, regardless of whether bonds are outstanding with respect to the harbor involved. Presumably, the District will continue to assess fees after all bonds are retired. Having considered that park district sales of food and amusements could be taxed (*Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469), we perceive no reason why a park district's rental of moorings cannot be taxed, though the funds from the rentals must be channeled to satisfy outstanding bonds.

Finally, the District argues that even if the city had the power to tax on the basis of the mooring fees, the rate of the tax (50%) is excessive and illegally interferes with financing of bonds relating to harbors. The District notes that the number of persons on the waiting list for moorings as of 1983 was at an all-time low of 345. The District states that the tax, which will increase the cost of mooring to boat owners by one-half, will adversely affect the demand for moorings. The reduced demand, it argues, will deplete or shorten the waiting list and, in turn, adversely affect its ability to sell revenue bonds on future projects. Alternatively, the District says that it will be forced to lower mooring fees in order to be com-

petitive with facilities outside of Chicago, which would decrease its revenue and diminish its ability to retire existing bonds. The District says that these suggested consequences usurp its statutory authority to set fees and to underwrite construction through the issuance of revenue bonds.

The record shows that the "mooring waiting list" has decreased steadily over recent years from 1,200 in 1977 to 345 in 1983. This was accompanied, however, by a steady increase in the number of moorings available from 3,674 in 1978 to 5,090 in 1983. It is reasonable to believe that this increase in the District's mooring capacity has accounted for the decrease in the waiting list. This decrease can hardly be attributed to the mooring-tax ordinance, which was enacted eight months after the above-cited statistics for 1983 were compiled. The consequences the District is fearful of are, of course, merely speculations. Moreover, tax rates are matters to be determined by legislative bodies, not by courts. "When the power to tax exists, the extent of the burden is a matter for the discretion of the lawmakers *** [with] the reservation *** that an act might be so arbitrary as not to be an exercise of the taxing power at all, the form of a tax being a cloak for something else." *Fox v. Standard Oil Co.* (1935), 294 U.S. 87, 99-100, 79 L. Ed. 780, 789, 55 S. Ct. 333, 338.

The argument by the District that the mooring tax is an unreasonable burden and abusive of home rule authority has similarity to one made in *City of Evanston v. County of Cook* (1972), 53 Ill. 2d 312. There the County of Cook imposed a tax on the sale of new motor vehicles within the county. Subsequently, the city of Evanston, a home-rule municipality within Cook County, adopted a similar tax for city sales. The city brought suit against the county, contending that under article VII, section 6(c), of the Constitution of Illinois, the county tax con-

flicted with its tax. Section 6(c) provides that "[i]f a home rule county ordinance conflicts with an ordinance of a municipality, the municipal ordinance shall prevail within its jurisdiction." (Ill. Const. 1970, art. VII, sec. 6(c).) This court held that no such conflict existed within the meaning of section 6(c). Both the home rule municipality and the home rule county were exercising taxing power by virtue of section 6(a) of article VII. Responding to the city's argument that to permit the imposition of both taxes would place an unreasonable burden on local businesses, the court stated:

"We recognize that the possibility of abuse exists in the exercise of any power. The Report of the Committee on Local Government recognized the possibility of abuse of the home-rule powers and relied upon the authority of the General Assembly, preserved by section 6[(g)], to protect against these possible abuses. (7 Proceedings 1591, 1614, 1628.) Under section 6(g) the General Assembly by a vote of three fifths of the members elected to each house may deny or limit the power of a home-rule unit to exercise its power to tax. Under this provision the General Assembly may prevent or rectify the hardships which plaintiffs envisage, should they occur." (*City of Evanston v. County of Cook* (1972), 53 Ill. 2d 312, 319.)

It is for the General Assembly, under article VII, section 6(g), to consider possible abuses of home rule powers.

In view of our holding that the ordinance is constitutional, we consider that the trial court's denial of a preliminary injunction was proper. For the reasons given, the judgment of the appellate court in cause No. 60879 and the judgment of the circuit court in cause No. 61058 are affirmed.

*Judgments affirmed.*